# TABLE OF CONTENTS

**Page**

Table of Citations............................................................................................ii

Statutes And Other Legal Authorities.............................................................iii

Introduction......................................................................................................1

Relevant Law...................................................................................................2

Argument..........................................................................................................3

Conclusion......................................................................................................15

Certificate of Service......................................................................................16

## TABLE OF CITATIONS

**Page**

United States v. Stewart,
727 F. Supp. 1068, 1072 (N.D. Tex. 1989).................................................2

United States v. Suarez,
263 F. 3d 468, 476 (6th Cir. 2001)..............................................................2

United States v. McCormack
31 F.Supp. 2d 176, 180(D. Mass. 1998).....................................................2

United States v. Moeller
987 F.2d 1134, 1136 (5th Cir. 1993)...........................................................2

United States v. LaHue,
998 F. Supp. 1182, 1184 (D. Kan. 1998)....................................................2

United States v. Ganim,
225 F. Supp. 2d 145,162-63........................................................................2

Salinas v. United States,
522 U.S. 52 (1997).......................................................................................5

United States v. Foley,
73 F.3d 484 (2d Cir. 1996)..........................................................................5

United States v. Phillips,
219 F.3d 404, 414 n. 16 (5th Cir. 2000).....................................................6

United States v. Santopietro,
166 F.3d 88,93 (2d. Cir. 1999)....................................................................6

Sabri v. United States,
541 U.S. 600,608, 124 S. Ct. 1941, 1947 (2004).......................................9

U.S. v. Del Toro,
513 F. 2d 656, 661-662 (2nd Cir. 1975)...................................................10

U.S. v. Hinton,
683 F.2d 195, 197-200 (7th Cir. 1982).....................................................10

U.S. v. Mosley,
659 F.2d 812, 814-816 (7th Cir. 1981).....................................................10

South Dakota v. Dole,
483 U.S 203(1987)............................................................................12

United States v. Lopez,
514 U.S. 549 (1995)...........................................................................12

Ashwander v. TVA,
297 U.S. 288, 346-47, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936)...................13

In re Nofziger,
956 F. 2d 287, 291 (D.C.Cir. 1992).......................................................14

## Statutes And Other Legal Authorities

**Page**

Federal Rule of Criminal Procedure 12(b)(3)(B).......................................1

18 U.S.C. 666...................................................................................3

18 U.S.C. 371...................................................................................3

La. R.S. 17:52...................................................................................5

La. Const. art. VI, §§ 5(G) and 7(B), and art. VII, § 24 ("Tax Assessors").....7

La. R.S. 47:1324, 1903, 1956–57, 1993.11..............................................7

La. R.S. § 47:1831–37........................................................................7

La. Const. art. VI, §§ 5(G) and 7(B), Art. VIII Section 9 ("Education")........8

La. R.S. 17: 81..................................................................................8

La. R.S. 17:6-7..................................................................................8

St. Landry Parish School Board Policy Manual........................................8

18 U.S.C. 201...................................................................................9

S. Rep. No. 225, 98th Cong., 1st Sess. 1983..........................................10

U.S. Constitution, Tenth Amendment...................................................11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NUMBER:12-CR-00299 |
| VERSUS | * | JUDGE RICHARD HAIK |
| JOHN MILLER and | * | MAGISTRATE JUDGE MICHAEL HILL |
| QUINCY RICHARD, SR. | | |

DEFENDANT QUINCY MASON RICHARD SR.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant Quincy Mason Richard Sr., by counsel, moves this court to dismiss All Counts alleging violations of 18 U.S.C. Section 666, along with the charge of conspiracy (18U.S.C. 371) to violate Section 666. All of these charges should be dismissed as (1) Quincy Richard Sr. was not an agent of the St. Landry Parish School Board as required for this Court to have subject matter jurisdiction of the alleged local crime under Section 666 nor under the relevant case law, (2) the conduct alleged in the Indictment is outside the scope of Section 666, when that statute is properly construed and kept within constitutional bounds (3) John Miller was not an agent of the St. Landry Parish School board rendering it impossible for Quincy Richard Sr. to have conspired, aided, or abetted him in any alleged conduct under Section 666. These Counts therefore should be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B).

I. **Introduction**

Defendant was indicted on three separate counts relating to violations of 18 U.S.C. Section 666, a statute that criminalizes bribery involving federal funds. With respect to these counts, the Government alleges that Defendants, Quincy Richard Sr. and John Miller, agents and

board members, corruptly agreed to accept and did in fact accept $5,000 each from candidate Joseph Cassimere intending to be influenced and rewarded in connection with the defendants' votes concerning the position of the Superintendent of the St. Landry Parish School Board.

The Government by way of its indictment intends to prove that Quincy Mason Richard Sr. is an agent and board member of the St. Landry Parish School Board, an organization receiving federal assistance in excess of $10,000 within a one year period before the commission of the alleged offenses.

## II. Relevant Law

**FEDERAL RULE OF CRIMINAL PROCEDURE 12 12(b)(3)(B)**

Federal Rule of Criminal Procedure 12 enables a Defendant to raise, at any time while the case is pending, a claim that the indictment fails to invoke the Court's jurisdiction or to state an offense. Fed. R. Crim. P. 12(b)(3)(B). Threshold legal issues, such as questions of jurisdiction, are properly addressed on a motion to dismiss the indictment. See *United States v. McCormack*, 31 F.Supp. 2d 176, 180(D. Mass. 1998) (citing *United States v. Korn*, 557 F. 2d 1089, 1090 (5th Cir. 1977). District courts have decided the precise issue here- whether an indictment sufficiently alleges a violation of section 666—on motions to dismiss. See, e.g., *United States v. Moeller*, 987 F.2d 1134, 1136 (5th Cir. 1993); *United States v. LaHue*, 998 F. Supp. 1182, 1184 (D. Kan. 1998); *United States v. Stewart*, 727 F. Supp. 1068, 1072 (N.D. Tex. 1989). Likewise, numerous courts have decided constitutional challenges to the application of Section 666 upon a Motion to Dismiss. See, e.g., *United States v. Ganim*, 225 F. Supp. 2d 145,162-63; see also *United States v. Suarez*, 263 F. 3d 468, 476 (6th Cir. 2001) (noting that a challenge to the constitutionality of the application of Section 666 is a question of law).

**18 U.S.C. 666**

The federal funds bribery statute, 18 U.S.C. 666 provides in pertinent part:

(a.) Whoever, if the circumstance described in subsection (b) of this section exists—

> (1) Being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
> (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5000 or more;

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

(d) As used in this section—

(1) the term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative;

**18 U.S.C. 371 Conspiracy to commit offense or to defraud United States**

Section 371 in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to affect the object of the conspiracy--

### III.   ARGUMENT

**A.   Quincy Richard Sr. was not an agent of the St. Landry Parish School Board as required as required for this Court to have subject matter jurisdiction of the conduct alleged in the Indictment.**

Contrary to the Government's designation, Quincy Richard Sr., by law, is not an "agent" of the St. Landry Parish School Board. The Fifth Circuit has clearly articulated what it means to be an "agent". For purposes of this Motion only, the Court can assume that, at trial, the Government will be able to prove that the St. Landry Parish School Board receives more than

3

$10,000 in federal funds in a relevant twelve-month period. The court can also assume that Quincy Richard Sr. is a member on the St. Landry Parish School Board. These factors alone do not establish agency however determining whether the allegedly bribed individual is an "agent" under the law is a necessary predicate to this Court's exercise of jurisdiction over Quincy Richard Sr.

Section 666 requires that the Defendant to be influenced or rewarded was an "agent" of the entity that receives federal funds. Both the common understanding of the word "agent" and the statute's specific definition of that term, both lead to the conclusion that as a board member on the St. Landry Parish School Board, when voting for a particular candidate or deciding which superintendent candidate would be ideal to lead the St. Landry Parish School System, is not an "agent" of the St. Landry Parish School Board.

The statute provides in its body the statutory definition of "agent" in Section 666 (d): "the term 'agent' means a person authorized to act on behalf of another person or organization." A Board Member on the St. Landry Parish School Board, when voting or deciding on a candidate for the Superintendent of the St. Landry Parish School System, is not acting "on behalf of" the St. Landry Parish School Board. Board Members when placing such a vote are acting "on behalf of" the voting members of his or her respective district and not the St. Landry Parish School Board. In Mr. Richard's case, when voting he acts on behalf of the voters of District 10 of St. Landry Parish never the St. Landry Parish School Board whenever he casts his vote on any issues before the Board.

The second half of the statutory definition of "agent" in 666 (d) does not apply to Mr. Richard as the District 10 Representative on the St. Landry Parish School Board either. Again,

the statute in its body further states in pertinent part the word "agent" in the case of an organization or government, includes a servant or employee, a partner, director, officer, manager, and representative." Unlike the other positions expressly stated in Section 666, board member is not a designated position under which the expanded definition of Section 666. A St. Landry Parish School Board Member is a servant of his district not the Board. A Board Member is not an "employee" of the St. Landry Parish School Board. A Board Member is a public official who cannot be removed from his/her office except as provided by La. R.S. 17:52. Absent the capability of the School Board to affect the employment status of a board member, it is impossible to deem board members as employees of the St. Landry Parish School Board. A Board Member is not a "partner" of the St. Landry Parish School Board. A Board Member is not a "manager" of the St. Landry Parish School Board. And lastly, a Board Member is not a "representative" of the St. Landry Parish School Board either as each individual Board Member is a representative of their constituents or of their respective Districts, not representatives of the St. Landry Parish School Board itself.

The Government in its indictment assumes and asserts that Richard is an agent and board member of St. Landry Parish School Board however he Government will not be able to provide any evidence that Quincy Richard Sr. was an "agent" of the St. Landry Parish School Board, as defined in the statute and interpreted in case law by the Fifth Circuit which is controlling precedent over this matter. To assume that by merely being a board member on the St. Landry Parish School Board that Richard was an agent for the purposes of Section 666 would be illogical and contradictory to Section 666 as pointed out by the Fifth Circuit. As noted by the Fifth Circuit, the Second Circuit has reaffirmed that even after the Supreme Court's decision in *Salinas v. United States*, 522 U.S. 52 (1997), overruling *United States v. Foley*, 73 F.3d 484 (2d

Cir. 1996), "Foley would not permit the Government to use Section 666 (a)(1)(B) to prosecute a bribe paid to a city's meat inspector in connection with a substantial transaction just because the city's parks department had received a federal grant of $10,000." *United States v. Phillips*, 219 F.3d 404, 414 n. 16 (5th Cir. 2000) (quoting *United States v. Santopietro*, 166 F.3d 88, 93 (2d. Cir. 1999) (abrogated on other grounds)) The statutory requirement of agent under Section 666 therefore does not include every employee or each individual board member, as argued by the government here. *See id.*

Although the Government asserts the statutory key word "agent" in its indictment, this does not sufficiently establish agency as it relates to 18 U.S.C. 666. This broad view espoused by the Government on the definition of "agent" however, does not rise to the level of involvement required to meet the logical view of agency required by *United States v. Phillips*. *United States v. Phillips*, 219 F. 3d 404 (5th Cir. 2000), set forth factors used to determine what makes one "an agent" for purposes of section 666. In *Phillips*, the Fifth Circuit reversed a $666(a)(1) conviction against the tax assessor of St. Helena Parish, Louisiana, who used his position to engage in various schemes involving friends and political allies. In *Phillips*, the Government asserted that St. Helena Parish received more than $10,000 in federal funds by participating in the food stamp program. On appeal, the Court was called upon to determine "whether for purposes of Section 666, Phillips as a tax assessor was an agent for St. Helena Parish." 219 F. 3d at 410. The court went on to note that since Phillips was not an agent, his actions could not have threatened the integrity of the organization's federal funds. Without an agency relationship to the recipient of federal funds, Section 666 does not reach the misconduct of local officials. *Id. At 413 n. 14.* In determining that the St. Helena Parish tax assessor, despite

his title, was not an agent of St. Helena Parish, the Court set forth a list of relevant factors. The Court stated:

1. The Louisiana Constitution treats tax assessment districts as independent of parish government;
2. The assessor's duties and responsibilities were set by state law, not local law;
3. The Parish had no "power, authority, or control over the assessor's duties or job";
4. The activities of the assessor were not supervised by local officials;
5. The assessor's salary and benefits were not paid by the parish;
6. Phillips was not "authorized to act on behalf of the parish with respect to its funds."

*Id.* At 412-413.

> The answer to this question first requires an understanding of the relationship between an assessor and a parish under Louisiana law. The Louisiana Constitution, as well as statute, establishes assessment districts as independent of parish government and therefore, although Phillips was the tax assessor for property in the parish, the parish has no power, authority, or control over the assessor's duties or job. *See La. Const. art. VI, §§ 5(G) and 7(B), and art. VII, § 24 ("Tax Assessors")*. An assessor's duties are set forth by state, not parish, law. See, e.g., La. R.S. §§ 47:1324, 1903, 1956–57, 1993.11 Phillips was not an officer of the parish as a matter of law. Moreover, the activities of the assessor are supervised by the Louisiana Tax Commission, a state board controlled by state officials. *See La. R.S. § 47:1831–37.*

*Unites States v. Phillips*, 219 F. 3d 404 (5th Cir. 2000)

For exactly the same reasons stated by the Court in *Phillips*, Quincy Mason Richard Sr. was not an agent of the St. Landry Parish School Board merely by being District 10's representative on the board.

1. The Louisiana Constitution treats parish school boards as independent of parish government;
2. Parish School Board's duties and responsibilities were set by state law, not local law;
3. St. Landry Parish has no authority or control over the duties of board members;
4. The activities of the St. Landry Parish School Board are not supervised by local officials
5. The St. Landry Parish Board Members' Salary is not provided for by the St. Landry Parish School Board

7

6. Richard, individual, was not authorized to act on behalf of any of the St. Landry Parish School Board Funds

The Louisiana Constitution, as well as statute, provides for the creation of parish school boards as independent of parish government and therefore, although Richard was a Board Member on the St. Landry Parish School Board, neither St. Landry Parish nor St. Landry Parish School Board has power, authority, or control over the board member's duties or job. *See La. Const. art. VI, §§ 5(G) and 7(B), Art. VIII Section 9 ("Education")*. The board's duties are set forth by state, not parish, law. *See, e.g., La. R.S. 17: 81*. Moreover, The St. Landry School Board activities are supervised by the Louisiana Board of Elementary and Secondary Education (BESE), a state board controlled by state officials. *See. La. R.S. 17:6-7*. Under criteria set forth in *Phillips*, Quincy Richard Sr.'s contention that he is not an "agent" of the SLPSB is further supported by the language provided in the St. Landry Parish School Board Policy Manual which states "The members of the St. Landry Parish School Board Shall have authority only when acting as a Board legally in session. The Board shall not be bound in any way by any action or statement on the part of any individual Board member except when such a statement or action is in pursuance of specific instructions from the Board." Although Richard, through his role of board member, could have some possible influence on other board members, that does not suffice to meet the requirement under *Phillip's* interpretation of "agent" under Section 666 because as a single board member, Richard had no authority to bind the St. Landry Parish School Board in any of its legal transactions nor was he authorized to act on behalf of the St. Landry Parish School Board with respect to its funds or programs and thus has no agency relationship to the recipient of federal funds. Even language used by the Government in the Indictment both favors and confirms the analysis that Quincy Richard Sr. was not an "agent" of the Board as defined by *Phillips*. The Indictment states "The St. Landry Parish School Board advertises,

8

interviews, and selects by majority vote the position of Superintendent of the St. Landry Parish Schools". For Quincy Richard Sr. to be deemed an "agent" for purposes of Section 666 under *Phillips*, the selection of the Superintendent would rest solely on his shoulders however as the Indictment confirms, this binding authority is granted only to the entire board not any individual board member. Due to the aforementioned, Section 666 does not reach the actions as alleged by the Government in its Indictment thus depriving this Court of subject matter jurisdiction over these proceedings.

**B.     The charges of the Indictment should be dismissed because it alleges only conduct that is outside the scope of Section 666, when the statue is properly construed and kept within constitutional bounds.**

Congress's choice of words in drafting Section 666 indicates that Congress did not intend, by giving federal grant moneys, the Government of the United States was buying the right to police the ethics of local school board officials when deciding on whom to vote for in a Superintendent's election. Although some prosecutors have attempted to portray Section 666 as a boundless statute covering every aspect of local and state government, such an interpretation is unconstitutional.

Enacted under Congress's "spending clause" power, Section 666 was created with an eye towards the ways in which state and local government, and private beneficiaries of federal assistance, use their funds and other property. As set forth by the Supreme Court, "Section 666 is authority to bring federal power to bear directly on individuals who convert public spending into unearned private gain." *Sabri v. United States*, 541 U.S. 600,608, 124 S. Ct. 1941, 1947 (2004) (emphasis supplied).

Before Section 666 was enacted, the federal criminal code contained a single, general bribery provision codified at 18 U.S.C. 201. Section 201 by its terms applied only to

6

"public officials," which the statute defined as "officers or employees or persons acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch." Section 201 (a)

*Salinas*, 522 U. S. at 58, 118 S. Ct. at 474.

As a result of three cases in which the parties were charged under 18 U.S.C. Section 201 which covered only people acting on behalf of the federal government, Section 666 was born. The three cases were *U.S. v. Del Toro*, 513 F. 2d 656, 661-662 (2nd Cir. 1975; *U.S. v. Mosley*, 659 F.2d 812, 814-816 (7th Cir. 1981); and *U.S. v. Hinton*, 683 F.2d 195, 197-200 (7th Cir. 1982), aff'd sub nom. *Dixson v. United States*, 465 U.S. 482, 104 S. Ct. 1172 (1984). The Supreme Court has also acknowledged the aforementioned as the cases which paved the need for Section 666, see *Salinas*, 522 U.S. at 58, 118 S. Ct. at 474. In addition to being acknowledged by the Supreme Court, the legislative history of the statute wherein the cases are referenced by name. See *S. Rep. No. 225, 98th Cong., 1st Sess. 1983* ("The concept [to be enacted in the new provision, Section 666] is not unlimited.... It is, however, the intent to reach thefts and bribery in situations of the types involved in the *Del Tor*, *Hinton*, and *Mosley* cases cited herein.")

With *Del Tor*, *Hinton*, and *Mosley* as framework for the creation of Section 666, it is further clear that Congress did not intend to reach the actions alleged against Quincy Richard Sr. in the government's indictment.

*Del Toro* involved a bribe to influence a real estate deal where the bribed person was an employee of a municipal entity that received federal funds.

> Evidence introduced by the Government allowed the jury to find that Del Toro and Kaufman had conspired to bride Pedro Morales, Assistant Administrator of the Harlem-East Harlem Model Cities Program. Kaufman, a lawyer and a real estate broker, hoped that Morales would use his official position to secure for Kaufman a lease by Model Cities of significant office space in one of the buildings for which Kaufman was the renting agent. The benefit to Kaufman would be a lucrative commission. Del Toro, the

10

>Executive Director of an East Harlem anti-poverty agency, acted as a middle man in the transaction.

*Del Toro*, 513 F. 2d at 658.

*Hinton*, involved bribery to influence the awarding of contracts, to housing rehabilitation contractors;

>The appellants were found guilty by a jury of soliciting money in exchange for the award of housing rehabilitation contracts funded under the Housing and Community Development Act of 1974. The appellants, Dixson and Hinton, were directors responsible for soliciting bids from contractors to perform housing rehabilitation which was funded by a grant from HUD.

*Hinton*, 683 F. 2d at 196-97.

*Mosley* concerned bribery to influence the decision of a federally funded agency that acted as an employment referral service.

>Appellant Jerry Mosley was found guilty by a jury of violating 18 U.S.C. 201 by soliciting through threats and receiving money in exchange for giving preferential treatment to certain individuals seeking jobs under the Comprehensive Employment and Training Programs Act.

*Mosley*, 659 F.2d at 813.

These cases which provided for the creation of Section 666 are far removed from what we have at issue in this case, which is an exercise of a fundamental right reserved exclusively to the States under the United States Constitution, Activities involving State Funded Public Education.

The Tenth Amendment to the United States Constitution states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Since education is not mentioned in the Constitution, it is one of those powers reserved to the states. Of course, the United States Supreme Court can declare that something not mentioned in the Constitution is so closely related to something that is

11

mentioned in the Constitution that the unmentioned power is a fundamental interest, which rises to constitutional protection. So far, the Supreme Court has not declared that education is a fundamental interest. The Federal Government is not in the business of educating K-12 children; the Federal Government's interest is only making sure that if a State provides education to one child then it must provide equal opportunity to all children. Thus, states have plenary, or absolute, power in the area of education.

Not only does the federal constitution confer no right to education, it does not even explicitly empower the U.S. Congress to legislate on the subject. An example of the Government's lack of authority over the State's power to regulate all issues involving Education within its borders is found in *United States v. Lopez*, 514 U.S. 549 (1995) when the Supreme Court held that a law making it a crime to possess a firearm within a certain distance of a school was an impermissible overextension of Congress's commerce power. Even the justices dissenting in *Lopez* agreed that the content of education was a classic area of State, not Federal, authority.

Most federal education legislation is therefore enacted under the "spending clause" of the Constitution, which gives Congress the authority to tax and spend for the general welfare. Since federal grants to the states may be conditioned upon the state's adoption of certain legal and regulatory structures, the federal government has been able to exercise substantial authority over K–12 education policy. Regulations and laws effecting the public education of a State are typically deemed unconstitutional unless they are compliant with the standards set forth in *South Dakota v. Dole*, 483 U.S 203(1987). In *Dole*, the Supreme Court in 1987 upheld a federal law withholding a percentage of federal highway funds from any state that declined to raise its minimum drinking age to twenty-one. "Applying Section 666 to offense conduct, absent evidence of any federal interest, would appear to be an unconstitutional exercise of power under

the Spending Clause." *Id. at 687.* This kind of carrot-and-stick approach underlies much federal education law, from the setting of nationwide achievement standards to the education of students with disabilities to Title I and other federal grants relating to education. Lacking the conditional grant elements set forth in *Dole*, it would be unconstitutional to allow Section 666 to be used to govern matters that are so close to the heart of State sovereign authority, which in this matter is Louisiana Public Education.

With Congress creating Section 666 to protect the integrity of federal funds, the alleged actions of Quincy Richard Sr. as an individual board member could not have remotely effected. Even the salary to which the Superintendent of St. Landry Parish Schools receives is paid for by State funds alone expanding the lack of Federal interest for the government to protect. Here, the Government would have to create hypothetical scenarios to support a contention that Richard's alleged conduct even remotely threatened the integrity of Federal funds however criminal convictions are based on actions or inactions of defendant not hypothecs that could possibly occur in the future.

**C. Although Constitutional issues are present, the Court's lack of subject matter jurisdiction should be the primary issue for these Charges to be dismissed.**

With Constitutional problems being created should Section 666 be applied to the alleged actions of Quincy Richard Sr., the doctrine of constitutional avoidance should prevail over this matter in particular. This doctrine has been widely used by courts to avoid serious constitutional concerns. Using the opinions of Justice Brandeis in his well-known and oft-cited concurring opinion (dissenting in part) in *Ashwander v. TVA*, 297 U.S. 288, 346-47, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) which reads,

> "The Court will not anticipate a question of constitutional law in advance of the necessity of deciding it. It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case. ... The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.... Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."

The Fifth Circuit has continuously taken the position that it will not take a constitutional question for decision if there is some other legitimate ground on which the case can be decided. Such a legitimate ground exists in this matter as this Court lacks subject matter jurisdiction as Quincy Richard Sr. is not and was not an "agent" in the context of Section 666 or under reasoning set forth in *Phillips* which is still controlling in the Fifth Circuit.

**D.    John Miller, as an individual board member, is not an agent of the St. Landry Parish School Board rendering it impossible for Quincy Richard Sr. to aid and abet or to be a conspirator as alleged in the Indictment.**

For the same reasons as Quincy Richard, Sr., Defendant, John Miller, as an individual member on the St. Landry Parish School Board would also not be deemed an "agent" of the St. Landry Parish School Board for purposes of Section 666 prohibiting this court from establishing subject matter jurisdiction over his alleged actions also. As Miller is not an "agent" of the St. Landry Parish School Board for purposes of Section 666, consequently Quincy Richard Sr. could never have conspired with, aided or abetted his alleged violation of that Statute. "It is well established that there must be a guilty principal before a second party can be found to be an aider or abettor." *See In re Nofziger*, 956 F. 2d 287, 291 (D.C.Cir. 1992). Additionally, the government in its indictment correctly labels Joseph Cassimere as a "candidate" for the position of Superintendent. As a "candidate" Joseph Cassimere would also not qualify as an "agent" of the St. Landry Parish School Board under the context of Section 666 thus impossible for the

government to potentially assert in the future that a conspiracy existed amongst the "candidate" and Quincy Richard Sr.

## IV. CONCLUSION

In summary, this is a case at the core of State Sovereign power, a case where the federal "power of the purse cannot be allowed to buy the right to set the terms of conduct for Educators in the State of Louisiana. Quincy Richard, Sr. as an individual member of the St. Landry Parish School Board does not have an agency relationship with the board under the controlling precedent set by *Phillips*. To extend the reach of Section 666 to conduct involving that of local parish educational issues would raise serious questions under the Tenth Amendment, and under the substantive boundaries of Congressional power to make laws governing a State's role in providing public education to the citizens of the State. If the founding fathers of this Nation viewed Elementary and Secondary Education as purely a State's power, the same should be true today in light of the Government's attempt to indict Richard for his actions involving purely a State issue. Therefore, all counts of the Indictment should be dismissed.

Respectfully submitted this 2nd day of <u>December</u>, 2012.

<u>s/Quincy M. Richard, Jr.</u>
Quincy M. Richard Jr.
16338 Keystone Blvd
Prairieville, LA 70769
337-308-5096
*Attorney for Defendant*
*Quincy M. Richard, Sr.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3nd day of December, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to Howard Parker, USDOJ, et. al, and all counsel of record.

**s/Quincy M. Richard, Jr.**
Quincy M. Richard Jr.